UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENDA LEE SANDER, | : | CIVIL NO: 1:21-CV-00636 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, *Acting* | : | |
| *Commissioner of Social Security*,[1] | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OPINION

### I. Introduction.

    This is a social security action brought under 42 U.S.C. § 405(g).  The

plaintiff, Brenda Lee Sander ("Sander"), seeks judicial review of the final decision

of the Commissioner of Social Security ("Commissioner") denying her claims for

supplemental security income under Title XVI of the Social Security Act.  We

have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

forth below, the Commissioner's decision will be affirmed, and judgment will be entered in favor of the Commissioner.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 15-1* to *15-10*.[2]  On November 1, 2018, Sander protectively filed[3] an application for supplemental security income, alleging disability beginning on May 23, 2012. *Admin. Tr.* at 35.  The Commissioner denied the claim on May 21, 2019, and again on reconsideration on October 16, 2019. *Id.* at 15.  Thereafter, Sander requested an administrative hearing. *Id.*  On April 8, 2020, Sander, who was represented by attorney Jo Ann Kelton, testified at a hearing before Administrative Law Judge ("ALJ") Charles A. Dominick. *Id.* at 33–61.  Josephine Doherty, a vocational expert, also testified at the hearing. *Id.* at 56–60.

The ALJ determined that Sander was not disabled and, therefore, denied Sander benefits. *Id.* at 12–27.  Sander appealed the ALJ's decision to the Appeals

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Sander's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

Council, which denied her request for review on February 3, 2021. *Id*. at 1–3. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On April 6, 2021, Sander, now represented by Jamie R. Hall, began this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial evidence and is contrary to law and regulation. *Doc. 1* at ¶ 8. Sander requests that the court reverse and set aside the Commissioner's decision or, in the alternative, remand the case for a further hearing with a different ALJ. *Id*. at 2.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 11*. The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Docs. 14, 15*. The parties filed briefs, *see docs. 18, 23, 24*, and this matter is ripe for decision.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Sander was disabled, but whether substantial evidence supports the Commissioner's finding that she was not disabled and whether the Commissioner correctly applied the relevant law.

### B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title XVI of the Social Security Act, a claimant generally must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).  Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).  Supplemental Security Income "is a federal income supplement

program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id.*

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On April 29, 2020, the ALJ denied Sander's claims for benefits. *Admin. Tr.* at 12–27.  At step one of the sequential-evaluation process, the ALJ found that Sander had not engaged in substantial gainful activity since the date of her application for benefits. *Id*. at 17.

At step two of the sequential-evaluation process, the ALJ found that Sander had the following severe impairments: fibromyalgia, degenerative disc disease/splondylosis of the lumbar spine, and degenerative disc disease/kyphosis of the thoracic spine. *Id*.  The ALJ further found that Sander had the following non-severe impairments: asthma, chronic obstructive pulmonary disease, emphysema, and anxiety. *Id.* at 17–18.

At step three of the sequential-evaluation process, the ALJ found that Sander did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 20.

The ALJ then determined that Sander has the RFC to perform light work. *Id*. The ALJ found that Sander "must be given the opportunity to alternate between sitting and standing at least every 30 minutes." *Id.*  The ALJ determined that Sander "is limited to occasional balancing, stooping, kneeling, crouching, and climbing on ramps and stairs," but may not crawl or climb "on ladders, ropes, or

8

scaffolds." *Id.*  Further, the ALJ concluded that Sander must avoid "unprotected heights and dangerous moving machinery" as well as "overhead reaching with the bilateral upper extremities." *Id.*  Per the ALJ's opinion, Sander is limited to only the "occasional use of foot controls." *Id.*  Finally, the ALJ noted that Sander "must avoid concentrated exposure to dusts, fumes, gases, and other pulmonary irritants" and "exposure to extreme temperatures, extreme humidity, wetness, or vibration." *Id.* at 21.  In making this RFC assessment, the ALJ reviewed Sander's symptoms as well as the objective medical evidence in the record. *Id.*  Additionally, the ALJ considered the "medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c." *Id.*

At step four of the sequential-evaluation process, the ALJ found that Sander had no past relevant work. *Id.* at 26.

At step five of the sequential-evaluation process, considering Sander's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as routing clerk, information clerk, and mail clerk—that exist in significant numbers in the national economy that Sander could perform. *Id.*

In sum, the ALJ concluded that Sander was not disabled. *Id.* at 27.  Thus, he denied Sander's claims for benefits. *Id.* at 12.

## V.  Discussion.

Sander raises two issues on appeal.  First, Sander claims that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly applied the relevant law and relied on "mischaracterization and selective consideration of the medical evidence." *Doc. 18* at 8.  Second, Sander claims that the ALJ failed to incorporate her non-severe mental impairments into the RFC assessment. *Id.*  For the reasons discussed below, we conclude that the ALJ erred in only one respect—by failing to perform a detailed assessment of Sander's mental impairments at step four—but such error was harmless.

### A. The ALJ's RFC determination is supported by substantial evidence because the ALJ properly applied the relevant law and did not rely on mischaracterized or selective evidence.

In the first issue raised on appeal, Sander claims that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly applied the relevant law.  "[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence." *Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014).  Sander claims that the ALJ did not adequately explain how he considered the supportability and consistency factors in evaluating the persuasiveness of the medial opinions of Maureen Polakowski, CRNP, DNP ("Dr. Polakowski"), and Ahmed Kneifati, M.D. ("Dr. Kneifati").

"Prior to March 2017, ALJs were required to follow regulations that defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Moore v. Kijakazi*, No. 1:21-CV-1769, 2023 WL 1973210, at *8 (M.D. Pa. Feb. 13, 2023).  Since March 2017, the approach to evaluating medical opinions "was changed from a hierarchical form of review to a more holistic analysis." *Id.*  Under the post-March 2017 regulations,[4] the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using the following factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 416.920c(c).  The most important factors are supportability and consistency. 20 C.F.R. § 416.920c(a).  As such, the ALJ must specifically explain how he or she "considered the supportability and consistency factors for a medical source's medial opinions or prior administrative medical findings in" his or her determination or decision. 20 C.F.R. § 416.920c(b)(2).  The ALJ may, but is not required to, explain how he or she considered the remaining three factors in determining the persuasiveness of a medical opinion. 20 C.F.R. § 416.920c(b)(2).

Supportability and consistency are defined in 20 C.F.R. § 416.920c(c).  As the regulation provides, supportability means: "The more relevant the objective

---

[4] Because Sander filed on November 1, 2018, the post-March 2017 regulations apply.

medical evidence and supporting explanations presented by a medical source are to

support his or her medical opinion(s) or prior administrative medical finding(s), the

more persuasive the medical opinions or prior administrative medical finding(s)

will be." 20 C.F.R. § 416.920c(c)(1).  "Simply put, supportability is an inquiry

geared toward assessing how well a medical source supported and explained their

opinion(s)." *Acosta Cuevas v. Commissioner of Social Security*, No. 20-CV-0502,

2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021).  On the other hand, consistency

means: "The more consistent a medical opinion(s) or prior administrative medical

finding(s) is with the evidence from other medical sources and nonmedical sources

in the claim, the more persuasive the medical opinion(s) or prior administrative

medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).  The consistency factor

focuses on "how well a medical source is supported, or not supported, by the entire

record." *Acosta Cuevas*, 2021 WL 363682, at *10.  Against this backdrop, we

address the ALJ's consideration of Dr. Polakowski and Dr. Kneifati's opinions in

turn.

### 1. The ALJ adequately explained how he considered the supportability and consistency factors in evaluating the medical opinion of Dr. Polakowski.

The ALJ found the opinion of Dr. Polakowski to be not persuasive. *Admin.*

*Tr.* at 25.  Per the regulations, the ALJ was required to discuss his consideration of

the supportability and consistency factors in making this determination. 20 C.F.R.

§ 416.920c(a).

> In assessing Dr. Polakowski's opinion, the ALJ noted the following:
>
> A physical impairment questionnaire was completed by [Dr.] Polakowski, CRNP, DNP on February 25, 2020 (Exhibit 18F). [Dr.] Polakowski noted the claimant's impairments would constantly interfere with attention and concentration required to perform simple work-related tasks, and she would need to recline or lie down in excess of typical break times during an 8-hour workday. She could walk less than one block, sit, stand, or walk 5 minutes each at one time, and the claimant would be able to sit, stand, or walk 0 hours in an 8-hour workday. The claimant would need to take unscheduled breaks at least every hour. She could lift and carry less than 10 pounds. Additionally, [Dr.] Polakowski noted the claimant would have limitations in reaching, handling or fingering, although she noted she was unable to determine use of hands, fingers, and arms because they had not been assessed. She reported the claimant would be absent from work more than four times a month. However, [Dr.] Polakowski noted the claimant would be physically capable of working an 8-hour day, 5 days a week, on a sustained basis (Id.) The undersigned finds the opinion of [Dr.] Polakowski not persuasive. The limitations opined, and particularly the sit/stand/walk limitations are internally inconsistent and not supported by the medical evidence of record, including relatively benign clinical findings (Exhibits 7F, 12F, and 14F) and no significant limitations on diagnostic imaging that would support these findings. (see, e.g. Exhibit 17F, p. 24).

*Admin. Tr.* at 25.  Here, the ALJ addressed his consideration of both the

supportability and consistency factors.  With respect to supportability, the ALJ

found Dr. Polakowski's opinion "internally inconsistent." *Id.*  For example, the

ALJ referred to Dr. Polakowski's report that Sander "would be absent from work more than four times a month," but also reporting that Sander would be "physically capable of working an 8-hour day, 5 days a week, on a sustained basis." *Id*. Thus, in finding Dr. Polakowski's opinion internally inconsistent, the ALJ considered how well Dr. Polakowski supported and explained her opinion. With respect to consistency, the ALJ maintained that Dr. Polakowski's opinion was not supported by the record, including "relatively benign clinical findings (Exhibits 7F, 12F, and 14F) and no significant limitations on diagnostic imaging that would support these findings. (see, e.g. Exhibit 17F, p. 24)." *Id*. Thus, the ALJ cited to specific evidence in the medical record to support his conclusion.

In challenging the ALJ's consideration of the consistency factor, Sander claims that the ALJ erred in citing to the diagnostic imaging. *Doc. 18* at 11–12. Even if we were to accept this argument, however, the ALJ still cited to other medical records that showed "relatively benign clinical findings." *Admin. Tr.* at 25 (citing Exhibits 7F, 12F, 14F). Thus, even if we cast the diagnostic imaging evidence aside, the ALJ still satisfied his obligations under the regulations because he cited other records that were inconsistent with Dr. Polakowski's opinion: Exhibits 7F, 12F, and 14F. *Id*. And the ALJ referenced them elsewhere in his opinion. *See id.* at 22–23 ("X-rays of the claimant's lumbar spine from March 15, 2019[,] show only mild multilevel spondylosis with mild grade 1 spondylolisthesis

14

of L4-L5. . . . A subsequent MRI of he claimant's thoracic spine from June 21,

2019[,] was normal. . . . Likewise, x-rays of the claimant's knees from March 15,

2019 was [*sic.*] unremarkable. . . . The claimant's longitudinal records show

subjective complaints, as well as evidence of impairments such as…chronic

obstructive pulmonary disease, and gastro-esophageal reflux disease, however, her

treatment was conservative and no significant functional limitations were

identified. . . . The pulmonary function test was consistent with mild obstructive

airway disease secondary to emphysema." (internal citations omitted)).

Accordingly, we find that the ALJ properly considered the supportability and

consistency factors in evaluating the medical opinion of Dr. Polakowski.

> **2. The ALJ adequately explained how he considered the supportability and consistency factors in evaluating the medical opinion of Dr. Kneifati.**

The ALJ found the opinion of Dr. Kneifati not to be persuasive. *Admin. Tr.*

at 25. As mentioned previously, the regulations require that the ALJ address both

supportability and consistency in evaluating the persuasiveness of Dr. Kneifati's

opinion. 20 C.F.R. § 416.920c(a). In assessing Dr. Kneifati's opinion, the ALJ

stated the following:

> Consultative examiner Ahmed Kneifati, M.D. completed a
> Medical Source Statement of Ability to Do Work Related
> Activities (Physical) on February 23, 2019 (Exhibit 8F, pp. 8–
> 13). Dr. Kneifati opined the claimant could lift and/or carry up

to 10 pounds occasionally. At one time, she could sit for 2
hours, stand for 1 hour, and walk for 10 minutes each. Total, in
an 8-hour workday, she could sit for 4 hours, stand for 3 hours,
and walk for 2 hours each. She does not require a cane to
ambulate. Dr. Kneifati opined the claimant could continuously
use her bilateral hands, but she is limited to occasionally using
her feet bilaterally. She could frequently kneel, crouch, crawl,
and climb ramps and stairs, but never climb ladders, ropes, or
scaffolds, balance, or stoop. She is limited to occasional
exposure to unprotected heights, moving mechanical parts,
operating a motor vehicle, humidity, wetness, extreme cold, and
extreme heat, but can never have exposure to dust, odors,
fumes, and pulmonary irritants. Additionally, she would be
unable to walk a block at a reasonable pace on rough or uneven
surfaces. The undersigned finds the opinion of Dr. Kneifati not
persuasive, as the doctor's own examination of the claimant
showing no significant physical deficits, as well as the
longitudinal evidence of record showing benign findings, does
not support sit/stand/walk limitations to such extent (see, e.g.
Exhibits 7F, 12F, and 14F).

*Admin. Tr.* at 24–25.  Here, the ALJ properly considered the supportability factor.

The ALJ noted that Dr. Kneifati's conclusions as to Sander's sit/stand/walk

limitations were inconsistent with Dr. Kneifati's own examination of Sander that

showed "no significant physical deficits." *Id.*  Thus, we find that the ALJ assessed

how well Dr. Kneifati supported and explained his opinion.

With respect to consistency, the ALJ noted that Dr. Kneifati's opinion as to

sit/stand/walk limitations was inconsistent with the "longitudinal evidence of

record." *Id.* at 25.  In drawing this conclusion, the ALJ again cited to the medical

record. *Id.* (citing Exhibits 7F, 12F, 14F).  Thus, we find that the ALJ properly

16

considered the consistency factor in finding that Dr. Kneifati's opinion was inconsistent with the entire medical record.

Accordingly, we find that the ALJ properly considered the supportability and consistency factors in evaluating the medical opinion of Dr. Kneifati.

### 3.  The ALJ's RFC determination did not rely on any mischaracterization or selective consideration of the medical evidence.

Sander asserts that the ALJ failed to address certain evidence that supports Dr. Polakowski's and Dr. Kneifati's opinions.

As a general matter, "an ALJ cannot rely only on the evidence that supports his or her conclusion, but also must explicitly weigh all relevant, probative, and available evidence; and provide some explanation for a rejection of probative evidence which would suggest a contrary disposition." *Voorhees v. Colvin*, 215 F. Supp. 3d 358, 384–85 (M.D. Pa. 2015).  The "sort of evaluation, where the evaluator mentions only isolated facts that militate against the finding of disability and ignores much other evidence that points another way, amounts to a 'cherry-picking' of the record which this Court will not abide." *Fanelli v. Colvin*, No. 3:16-CV-1060, 2017 WL 551907, at *9 (M.D. Pa. Feb. 10, 2017).

Sander claims that the ALJ erroneously characterized the medical record as "benign," ignoring the notations of Jack Michael Smith, M.D., and Georgios

Klironomos, M.D., who documented pain and tenderness in Sander's thoracic spine region. *Doc. 18* at 13. But the ALJ did not ignore this evidence. *See Admin. Tr.* at 22 ("Throughout the treatment records, while there is occasional notation of tenderness to palpation, kyphosis and limited range of motion, the claimant's treatment providers repeatedly note full range of motion in bilateral hips, with no deformity, but sensation diffusely diminished in the bilateral lower extremities with 4/5 strength in the bilateral lower extremities, significant kyphosis of the thoracic spine with tenderness to palpation to light touch and limited range of motion of both flexion and extension in the spine (e.g. Exhibit 4F/3)."). Instead, the ALJ found that the clinical findings were minimal and did not support the pain and functional limitations alleged. *Id.*

Finally, Sander asserts that the ALJ mischaracterized the evidence to support his finding that Dr. Kneifati's opinion was unsupported and inconsistent with the record. *Doc. 18* at 15–16. The ALJ noted that Dr. Kneifati's examination of Sander revealed "no significant physical deficits." *Admin. Tr.* at 25. Sander argues that the ALJ mischaracterized this examination because Dr. Kneifati actually observed "[Sander's] difficulty walking on toes and heels, inability to fully squat, bilaterally positive straight leg raising test in the supine position, tenderness at L4-L5 and L5-S1, and limited range in motion of the lumbar spine." *Doc. 18* at 15.

In support of this argument, Sander cites to *Malone v. Barnhart*, No. 05-2991, 2008 WL 4155707, at *4 (E.D. Pa. Aug. 14, 2008).  In *Malone*, the ALJ mischaracterized statements made by one doctor as statements made by another doctor. *Id.* at *6.  The ALJ then discredited the doctor, at least in part, because of these misattributed statements. *Id.*  The District Court found that attributing one doctor's statements to another doctor was a "mischaracterization" and caused the ALJ to discredit Dr. Kauffman for the wrong reason. *Id.*

This case is not factually analogous to *Malone*.  In this case, the ALJ simply made a generalized statement about the totality of Dr. Kneifati's examination. Further, the ALJ did not suggest that Dr. Kneifati found no physical deficits. Rather, the ALJ stated that Dr. Kneifati found no *significant* physical deficits. Thus, the information Sander cites to may properly fall within this characterization as present, but insignificant.

In conclusion we find that the ALJ's RFC determination did not rely on any mischaracterization or selective consideration of the medical evidence.

**B. Although the ALJ failed to perform a more detailed assessment of Sander's mental limitations at step four, the ALJ nonetheless incorporated Sander's non-severe mental impairments into the RFC assessment.**

In the second issue raised on appeal, Sander maintains that the ALJ failed to incorporate her non-severe mental impairments into the RFC assessment.

19

At step two of the sequential evaluation process, the ALJ found the following medically determinable mental impairment: "anxiety/depression." *Admin. Tr.* at 18.  In making this determination, the ALJ analyzed each of the four broad functional areas of mental functioning found in the disability regulations used to evaluate mental disorders: (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).  Because the ALJ rated the degree of limitation in each of these areas as "mild," he concluded that the claimant's mental impairments were non-severe. *See* 20 C.F.R. § 404.1520a(d)(1) (noting that, when an ALJ finds no mental limitation or mild mental limitation, the ALJ generally concludes that the mental impairment is not severe).  After making this finding, the ALJ noted that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis." *Admin. Tr.* at 20.

But Social Security Ruling 96-8p provides that the criteria used to rate the severity of mental impairments at steps two and three of the sequential evaluation process are "not an RFC assessment." SSR 96-8p, 1996 WL 374184, at *4.  And "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells v. Colvin*,

727 F.3d 1061, 1068–69 (10th Cir. 2013).  Instead, "[t]he mental RFC assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." SSR 96-8p, 1996 WL 374184, at *4.  And the ALJ must consider all limitations and restrictions imposed by an individual's impairments, whether severe or non-severe. SSR 96-8p, 1996 WL 374184, at *5.  And more, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7.

With this in mind, we conclude that the ALJ failed to adequately address the claimant's non-severe mental limitations in the RFC discussion.  Although the ALJ found "mild" limitations in each of the four broad functional areas of mental functioning, the ALJ did not address each of these limitations in the RFC or explain why these limitations did not affect the RFC.  Moreover, as Sander points out, the ALJ was required to provide a "more detailed assessment" of Sander's mental limitations at step four.  In this case, the ALJ did not provide the requisite function-by-function analysis required by the regulations.

Still, we must assess whether the ALJ's error at step four was harmless. "Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals." *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). Thus, a claimant must explain "'how the . . . error to which he points could have made any difference.'" *Id.* (quoting *Shineski v. Sanders*, 556 U.S. 396, 413 (2009)). "An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Although an error may be harmless, we must be mindful that "'[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.'" *Fargnoli*, 19 247 F.3d at 44 n.7 (quoting *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

At the outset, we note that the ALJ did include some discussion of Sander's non-severe mental impairments in the RFC. *Admin. Tr.* at 23–24. The ALJ concluded that "the record simply does not support any significant mental functional limitations" and that there is no significant evidence "to establish mental functional limitations due to her physical impairments or medications." *Id.* at 23. Of importance to the ALJ was the fact that, by December 2019, Sander had not been on anxiety medication for 15 years and had likewise denied that her

22

"anxiety/depression symptoms affect her daily function or interaction with others."
*Id*. at 23–24.

Sander has also not identified any record indicating treatment by a mental practitioner that the ALJ failed to consider.  To the contrary, the record indicates that Sander has never received inpatient, outpatient, or emergency room treatment from a mental health professional. *Id*. at 74.  Still, Sander asserts that the ALJ's failure to include the more detailed analysis, alone, warrants remand. *Doc. 18* at 17–18.  We disagree.  Sander has not explained how a more detailed discussion at step four would have resulted in any functional limitations in the RFC.  Sander correctly points out that the ALJ is not obligated to find any functional limitation in the RFC simply because he found mild limitations at step two. *Delio v. Commissioner of Social Sec.*, No. 13-78-E, 2014 WL 4414830, at *4 (W.D. Pa. Sept. 8, 2014) (rejecting an argument that, because the ALJ found mild limitations at step two, he was required to incorporate some restriction into the RFC).

We thus conclude that the ALJ's failure to conduct a more detailed assessment of Sander's mental impairments at step four was harmless error.

## VI.  Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner.

An appropriate order follows.

*__S/Susan E. Schwab__*
Susan E. Schwab
United States Magistrate Judge